# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

JIMMY LEE BROOKS                                                                                    PLAINTIFF

v.                                        NO. 3:10CV00215 HDY

MICHAEL J. ASTRUE,                                                                              DEFENDANT
Commissioner of the Social
Security Administration

## MEMORANDUM OPINION AND ORDER

BACKGROUND. Plaintiff Jimmy Lee Brooks ("Brooks") commenced the administrative portion of this case by filing applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). His applications were denied initially and upon reconsideration. He thereafter requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). A decision adverse to Brooks was eventually issued by the ALJ, and Brooks appealed. The ALJ's decision was subsequently affirmed by the Appeals Council; as a result, the decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Brooks then commenced the judicial portion of this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. It requires the Court to consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary. See Heino v. Astrue, 578 F.3d 873 (8th Cir. 2009).

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, the ALJ found that Brooks has not engaged in substantial gainful activity since November 1, 2006, the alleged onset date. At step two, the ALJ found that Brooks has the following severe impairments: "diabetes mellitus, degenerative disc disease of the cervical spine, obesity, and general arthralgias." See Transcript at 11. At step three, the ALJ found that Brooks does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The ALJ then assessed Brooks' residual functional capacity and found that he is capable of performing the full range of medium work, that is, "[he] can lift/carry a maximum of [fifty] pounds occasionally and [twenty-five] pounds frequently and stand, walk, or sit six hours in an eight-hour workday." See Transcript at 13. At step four, the ALJ found that Brooks is capable of performing his past relevant work as a janitor and forklift operator as the work "does not require the performance of work-related activities precluded by [his] residual functional capacity …" See Transcript at 14. Given the foregoing findings, the ALJ concluded that Brooks was not under a disability as defined by the Act at any time from the alleged onset date through the date of the ALJ's decision.

BROOKS' ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? Brooks thinks not and advances the following reasons why: (1) the ALJ failed to fully develop the record because Brooks' request for a consultative examination was ignored; (2) the ALJ failed to consider that Brooks is illiterate; (3) there are no findings by a treating physician substantiating the ALJ's finding as to Brooks' residual functional capacity; (4) the ALJ failed to properly consider Brooks' subjective complaints; (5) the ALJ failed to identify the physical and mental demands of Brooks' past relevant work; and (6) given Brooks' significant non-exertional impairments, the ALJ should have obtained the testimony of a vocational expert.

DEVELOPING THE RECORD. Brooks first maintains that the ALJ failed to fully develop the record. Brooks so maintains because his request for a consultative examination was ignored.

The ALJ has an obligation to fully develop the record, even if the claimant is represented by counsel. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). There is no bright line test for determining whether the ALJ fully developed the record; the determination is made on a case by case basis. See Id. It involves examining whether the record contains sufficient information for the ALJ to have made an informed decision. See Pratt v. Asture, 372 Fed.Appx. 681 (8th Cir. 2010). With regard to ordering a consultative examination, it is reversible error for an ALJ not to order such an examination when it is necessary to make an informed decision. See Freeman v. Apfel, 208 F.3d 687 (8th Cir. 2000).

The Court has examined the record and can find nothing to substantiate Brooks' assertion that he requested a consultative examination or that his request was ignored. With regard to whether he ever made such a request, the Court adopts the position advanced by the Commissioner, which is supported by the record and is as follows:

> … [Brooks] does not cite to the place in the record where he made such a request. Review of the August 27, 2009, hearing transcript shows that [his] attorney did not make any request at the outset of the hearing when the ALJ asked him to identify preliminary matters. … At the conclusion of [Brooks'] testimony, [his] attorney stated that he did not have any questions. … At the same hearing, and after [Brooks] offered some new information about the possibility that his doctor had recommended drastic surgery [footnote omitted], the ALJ agreed to keep the record open. … Still, [Brooks'] attorney did not request a consultative examination. … [Brooks'] request for reconsideration of the initial administrative decision denying him benefits did not request a consultative report and stated that he had no additional evidence to present. … Later, [his] request for review of the hearing decision did not include a request for a consultative exam. … On April 30, 2010, and for the first time, [his] representative stated that he requested a psychological consultation, "which the ALJ refused." …

See Document 17 at 6-7. Because Brooks never made a request for a consultative examination, any assertion that the ALJ ignored such a request is simply without merit.

Notwithstanding the foregoing, the Court has examined the record to determine whether it contains sufficient information for the ALJ to have made an informed decision. The Court is satisfied that the record is indeed sufficient. It contains a number of Brooks' records, medical and otherwise, and he has not identified any record that should have been included in the record but was not. Accordingly, the Court finds that the ALJ fully developed the record.

ILLITERACY. Brooks next maintains that he is illiterate. He maintains that his illiteracy was not considered, that his request for a consultative examination to evaluate his illiteracy was ignored, and that Rules 201.17 and 202.09 of the Medical-Vocational Guidelines ("Guidelines") compel a disability finding for someone who is illiterate and has his residual functional capacity, age, and work experience.

"Illiteracy means the inability to read or write." See 20 C.F.R. 404.1564(b)(1); 20 C.F.R. 416.964(b)(1). The governing regulations additionally provide the following: "We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally an illiterate person has had little or no formal schooling." See Id. The determination of whether a claimant is illiterate typically does not swing on one factor but instead requires the consideration of several different factors. See Howard v. Massanari, 255 F.3d 577 (8th Cir. 2000).

The ALJ did not consider the question of whether Brooks is illiterate. Although it is not clear why, it is likely that the ALJ by-passed the question because Brooks' illiteracy is not of such a degree that it should have been considered.

The Court is satisfied that the ALJ did not commit reversible error in by-passing the question of Brooks' illiteracy; it is simply not of such a degree that it should have been considered. First, in applying for benefits, Brooks made several representations about his ability to read and write. He specifically represented that he can read and understand English and can write more than his name in English. See Transcript at 89.

Second, Brooks testified at the administrative hearing about the extent of his education. He testified that he went as far as the ninth grade in school, see Transcript at 25, a level of education the governing regulations define as a "limited education," see 20 C.F.R. 404.1564(b)(3); 20 C.F.R. 416.964(b)(3). With regard to his educational progress during those years, he offered no evidence whatsoever that he experienced any difficulties in school.

Third, Brooks also testified at the administrative hearing about his proficiency in reading and writing. Although he testified that he cannot read or write reasonably well, and needs help reading the newspaper and forms prepared by the Social Security Administration, he did testify that he can read "some things, maybe like-maybe about, you know, a book or something, you know, like not these, you know, these big words or something like that, ..." See Transcript at 25.

Fourth, and most significant, Brooks worked for a number of years as a janitor and forklift operator. See Transcript at 26, 106. The work indicates that he can meet the minimum literacy demands of those jobs, and there is nothing to suggest that his literacy level declined after he left the jobs.

Last, Brooks offered no testing to support the assertion that he is illiterate. Although he maintains that his request for a consultative examination to evaluate his illiteracy was ignored, there is nothing to suggest that he ever made such a request. Because he never made such a request, any assertion that the ALJ ignored the request is simply without merit.

For the foregoing reasons, the Court finds that the ALJ did not commit reversible error in by-passing the question of Brooks' illiteracy. As a result, it was not necessary for the ALJ to have considered Rules 201.17 and 202.09 of the Guidelines.

RESIDUAL FUNCTIONAL CAPACITY. Brooks next maintains that his residual functional capacity was not properly assessed. He maintains that there are no findings by a treating physician substantiating the finding as to his residual functional capacity.

Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace." See Id. at 539.

In assessing Brooks' residual functional capacity, the ALJ considered Brooks' medical history and his impairments, severe and not severe, supported by the medical evidence. In doing so, the ALJ relied upon the findings made by a state agency physician, Dr. Ronald Crow ("Crow"). See Transcript at 230-237. The ALJ also considered Brooks' subjective complaints.[1] The ALJ found that neither the medical evidence nor Brooks' subjective complaints prevent him from performing the full range of medium work.

---

1

In considering those complaints, the ALJ cited, inter alia, Social Security Ruling 96-7p. It outlines the standard the ALJ must use in assessing the credibility of a claimant's subjective complaints. It conforms to the standard articulated in Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984), by providing that the ALJ must consider, inter alia, the following factors in assessing the claimant's credibility: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain and other symptoms; factors that precipitate and aggravated the symptoms; the type, dosage, effectiveness, and side effects of any medication; and any functional restrictions.

Substantial evidence on the record as a whole supports the ALJ's assessment of Brooks' residual functional capacity. The ALJ properly considered the medical evidence, and it was not error for the ALJ to have relied upon Crow's findings as he based them on the records he reviewed from the East Arkansas Family Health Center, the Mid-South Internal Medicine Clinic, and the Crittenden County Memorial Hospital. See Transcript at 237. The Court has reviewed those records. See Transcript at 138-159 (East Arkansas Family Health Center); 218-219, 228-229 (Mid-South Internal Medicine Clinic); and 160-216, 241-263, 289-373 (Crittenden County Memorial Hospital). There is nothing in those records that contravenes the ALJ's finding as to Brooks' residual functional capacity.

The ALJ also properly considered the non-medical evidence, including Brooks subjective complaints. There is nothing in the non-medical evidence that contravenes the ALJ's finding as to Brooks' residual functional capacity. Brooks complained of pain in his shoulder, back, and leg, see Transcript at 30-32, and of migraine headaches, see Transcript at 38. Although he is undoubtedly in some pain, his credibility is undermined by what appears to be an exaggerated inability to perform the simplest of daily activities, see Transcript at 98-105; his failure at times to take the medicine prescribed by his treating physicians, see Transcript at 138, 329; and, particularly telling, the fact that many of his complaints are at odds with the evidence. For instance, Brooks testified at the administrative hearing that his physicians recommended amputating both of his legs because of "poison, tumors, [and] sugar …," see Transcript at 42, but there is no evidence that any physician ever made such a drastic recommendation.

Brooks faults the ALJ's assessment because it is not supported by the findings of a treating physician. The Court has examined the findings of Drs. Nidal Rahal, see Transcript at 138, 143, 147; Wilfred Onyia, see Transcript at 218-219, 228-229; Ian Murray, see Transcript at 168, 176, 201, 253; Churchill Akhigbe, see Transcript at 328-329; Michael David Munday, see Transcript at 330-331; and Steven Roney, see Transcript at 350. None of the physicians offered an opinion as to the most Brooks can do despite his limitations, but there is nothing about their findings that is inconsistent with the ALJ's finding that Brooks is capable of performing the full range of medium work.[2]

THE PHYSICAL AND MENTAL DEMANDS OF BROOKS' PAST RELEVANT WORK. Brooks next maintains that the physical and mental demands of his past relevant work as a janitor and forklift operator were not properly identified. He additionally maintains that the ALJ failed to explain why Brooks' residual functional capacity permits him to perform such work.

Before the ALJ determines that a claimant can perform his past relevant work, the ALJ must first fully investigate, and make explicit findings as to, the physical and mental demands of the work. See Sells v. Shalala, 48 F.3d 1044 (8th Cir. 1995). See also Social Security Ruling 82-62. Once the ALJ does so, he must then compare the demands of the work with what the claimant is capable of performing. See Sells v. Shalala, supra.

---

[2] As a separate assertion of error, Brooks maintains that his subjective complaints were not properly considered by the ALJ. The assertion will not be addressed separately as the Court has found that substantial evidence on the record as a whole supports the ALJ's treatment of Brooks' subjective complaints.

The ALJ's findings as to the physical and mental demands of Brooks' past relevant work were minimal, and the ALJ's comparison of those demands with what Brooks is capable of performing was also minimal. In full, the ALJ found the following: "In comparing [Brooks'] residual functional capacity with the physical and mental demands of [his past relevant work], the undersigned finds that [he] is able to perform it as generally performed (Dictionary of Occupational Titles 389.667-010 and 921.683-050)." See Transcript at 15.

Substantial evidence on the record as a whole supports the ALJ's minimal findings as to the physical and mental demands of Brooks' past relevant work and the ALJ's comparison of those demands with what Brooks is capable of performing. The ALJ correctly identified the demands of Brooks' past relevant work as a janitor by citing the applicable description of the work found in the Dictionary of Occupational Titles ("DOT"), i.e., 389.667-010, and his past relevant work as a forklift operator by citing the application description of the work found in the DOT, i.e., 921.683-050. The ALJ committed no error in so identifying the demands of Brooks' past relevant work. The ALJ may discharge the duty to make explicit findings regarding the demands of a claimant's past work by "referring to the specific job descriptions in the [DOT] that are associated with the claimant's past work." See Sells v. Shalala, 48 F.3d at 1047. The ALJ then correctly compared the demands of Brooks' past relevant work with the finding the ALJ made regarding Brooks' residual functional capacity, the latter finding being supported by substantial evidence on the record as a whole.

VOCATIONAL EXPERT TESTIMONY. Brooks last maintains that the ALJ should have obtained the testimony of a vocational expert. Brooks so maintains because he has significant non-exertional impairments.

In Draper v. Barnhart, 425 F.3d 1127, 1132 (8th Cir. 2005), the Court of Appeals re-stated the rule governing the need for vocational expert testimony. It is as follows:

> Generally, if the claimant suffers from nonexertional impairments that limit [his] ability to perform the full range of work described in one of the specific categories set forth in the guidelines, the ALJ is required to utilize testimony of a vocational expert. … The exception to this general rule is that the ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC [residual functional capacity] to perform the full range of activities listed in the guidelines.

The ALJ did not obtain vocational expert testimony. Although it is not clear why, it is likely because he concluded his analysis of Brooks' applications at step four, or upon finding that Brooks can return to his past relevant work.

The Court is satisfied that the ALJ did not commit reversible error in not obtaining vocational expert testimony. First, the ALJ stopped at step four. Substantial evidence on the record as a whole supports his decision to do so, and it was unnecessary to obtain vocational expert testimony. Second, substantial evidence on the record as a whole supports the ALJ's finding that Brooks' non-exertional impairments do not significantly diminish his residual functional capacity to perform the full range of medium work.

CONCLUSION. There is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Brooks' complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___14___ day of June, 2011.


_____
UNITED STATES MAGISTRATE JUDGE

.